UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DEBORA COLE,
                                Plaintiff

-vs-

SERGEANT STEPHEN MESITI, Village of Brockport
Police Officer, JOHN VADAS, Brockport Police
Officer,
                                Defendants
_____

DECISION AND ORDER

19-CV-6012 CJS

## INTRODUCTION

In this action the Plaintiff asserts that Defendants used excessive force when arresting her, in violation of New York State law and her rights under the U.S. Constitution. It is undisputed that Plaintiff sustained a broken leg during the arrest. Now before the Court is Defendants' motion for summary judgment, ECF No. 28, based on qualified immunity. The Court cannot say as a matter of law that the use of force was reasonable, since there is a triable issue of fact as to whether Defendants unnecessarily applied force to Plaintiff's leg after she was restrained, as she claims. Consequently, Defendants' application is denied.

## BACKGROUND

The facts of the action are relatively straightforward and mostly undisputed, as the events were largely captured on the defendant officers' body-worn cameras. On September 11, 2017, in the Village of Brockport, New York, two police officers, Stephen Mesiti ("Mesiti") and John Vadas ("Vadas") were dispatched to Plaintiff's home after a 911 call was received, from Plaintiff's mental health therapist, indicating that Plaintiff was planning to commit suicide. Upon arriving at Plaintiff's home, along with two Emergency Medical Technicians ("EMTs"), the officers spoke with Plaintiff, who admitted she was suicidal. The officers also spoke by telephone with Plaintiff's

1

therapist and Plaintiff's boyfriend, both of whom indicated that Plaintiff was suicidal.

Plaintiff had been the subject of prior mental-health-related police visits to her home by Brockport Village Police officers, but had always agreed to go to the hospital voluntarily. On this occasion, however, Plaintiff refused the officers' requests that she accompany them to the hospital voluntarily for evaluation and/or treatment. Additionally, Plaintiff directed verbal profanity and hostility toward Mesiti, with whom she was familiar from previous police visits to her home involving herself or her children.[1] Since Plaintiff was unwilling to accompany the officers voluntarily, Defendants indicated that they were going to arrest her, pursuant to New York Mental Hygiene Law § 9.41.

Plaintiff, who up until that point had remained sitting in her living room, and had adamantly insisted she would not go with the officers, abruptly stood and announced that she wanted to "use the bathroom first."[2] The officers, though, decided to remove Plaintiff from the home without allowing her to go into the bathroom, and each grabbed one of Plaintiff's arms. Plaintiff is a relatively small-framed person, and the officers are both taller and heavier than she. Plaintiff nevertheless attempted to pull away from the officers and "mule kicked" Mesiti in his thigh. Simultaneously, the officers used an "arm bar" technique to take Plaintiff to the carpeted floor. This resulted in the three being on the floor, with Plaintiff in the middle and an officer on either side of her.

Plaintiff does not allege that she sustained any injury from being grabbed, placed in an arm bar, or taken to the ground. However, she contends that immediately after being taken to the ground, she felt one of the officers kneel upon, or otherwise direct significant force at, the back of her leg, fracturing her tibia. According to the Second Amended Complaint, "one officer,

---

[1] For example, Plaintiff repeatedly said "fuck you" to Mesiti, and referred to him as a "dick head."
[2] Plaintiff's speech on the recording seems somewhat slurred at times, but for purposes of this Decision and Order, the Court accepts Plaintiff's assertion that this is what she said.

(VADAS) without provocation slammed his leg (knee) down onto Plaintiff's right leg with such force that the officer shattered the Plaintiff's right tibia and kneecap[.]" Plaintiff immediately began complaining that her leg was broken. The leg, though, did not appear deformed or obviously fractured, and the officers assured Plaintiff that her leg was not broken. However, Plaintiff was unable to walk, and upon being evaluated at the hospital later that day, it was determined that she indeed had a fractured tibia needing repair with orthopedic surgery.

The use-of-force incident unfolded quickly with Plaintiff, Mesiti and Vadas in very close proximity to each other as they were going to the floor. Consequently, footage from the officers' body-worn-cameras does not visually capture the lower halves of the parties' bodies, or directly support or contradict the parties' conflicting accounts of whether Defendants did anything to Plaintiff's leg. Nor does the record indicate what may have been observed by the two EMTs who were present during the entire incident.

The operative Second Amended Complaint (ECF No. 20) purports to assert the following causes of action against Mesiti and Vadas: 1) battery under New York law; 2) assault under New York law; 3) excessive force Fourth Amendment violation under 42 U.S.C. § 1983 ("Section 1983").[3]

On February 5, 2021, Defendants filed the subject motion for summary judgment on the basis of qualified immunity, as to all three causes of action. Defendants contend that it was reasonable for them to grab Plaintiff's arms to escort her out of her house, since she was suicidal and had refused multiple requests to go to the hospital voluntarily. Defendants also maintain that after Plaintiff attempted to pull away from them and kicked Mesiti, it was reasonable to use

---

[3] *See, McKinney v. City of Middletown*, 49 F.4th 730, 739 (2d Cir. 2022) ("When a plaintiff alleges excessive force ... the federal right at issue is the Fourth Amendment right against unreasonable seizures.' *Tolan v. Cotton*, 572 U.S. 650, 656, 134 S.Ct. 1861, 188 L.Ed.2d 895 (2014).").

3

an arm bar technique to take Plaintiff to the floor in a controlled manner, in order to gain control and handcuff her. Defendants insist that they did not use any other type of force in arresting Plaintiff.

Defendants' motion essentially focuses on arguing that their use of the arm bar technique, in particular, was reasonable and not excessive or tortious. *See, e.g.*, ECF No. 28-1 at p. 5 ("The Officers did not use any other force apart from the arm bar technique to effectuate the mental health arrest of the Plaintiff. *The arm bar was a reasonable and necessary use of force* to effectuate the arrest based on the circumstances facing the Officers.") (emphasis added); *see also*, ECF No. 28-2 at p. 14 ("[B]*ringing Ms. Cole to the ground* was reasonable, and did not violate clearly established law.") (emphasis added); *id*. at pp. 14–15 (recapitulation of Defendants' argument).[4] Defendants' motion does not address the Complaint's contention that Plaintiff's injury occurred *after* she was on the floor.

On March 23, 2021, Plaintiff filed her opposition (ECF No. 30) to Defendants' motion. Plaintiff admits that she was suicidal at the time of the incident, that she was in need of emergency mental health treatment, that the officers had probable cause to arrest her, that she refused to accompany the officers, that she attempted to pull away from the officers, and that she verbally abused and kicked Mesiti. Plaintiff further admits that the officers had reason not to allow her to go to the bathroom, since she had threatened to commit suicide by taking pills. *See*, ECF No. 30-1 at p. 4 ("Defendants were brought to her home because Plaintiff was suicidal and needed help.").

Plaintiff contends, however, that Defendants' motion essentially ignores the elephant in the room by failing to address her broken leg. *See*, ECF No. 30-1 at p. 4 ("Defendant's motion

---

[4] Defendants also argue that to the extent the Second Amended Complaint asserts a separate cause of action for punitive damages, it should be dismissed since such damages are a remedy, not a separate cause of action. However, the Court does not interpret the pleading as asserting such a separate cause of action, and Plaintiff's response to Defendants' motion confirms that she is not asserting such a cause of action.

'sets the stage' to the excessive force which leads to Plaintiff's fractured tibia, but Defendants never get to the 'main event.'").  Indeed, Plaintiff states that while she may not agree it was necessary for the officers to use the arm bar technique on her, it is the injury to her leg, and not Defendants' use of the arm bar, that is the basis of her claims.[5] *See, id*. at p. 8 ("[T]he arm bar take down was not the excessive force alleged in the complaint.").  Plaintiff contends, in that regard, that "Defendants are not entitled to qualified immunity as no reasonable officer could believe they were entitled to use any force [against] Plaintiff *after she was on the ground*." ECF No. 30-1 at p. 8 (emphasis added).

Additionally, Plaintiff alleges that the injury to her leg was intentional retaliation for her resistance to the officers' attempt to arrest her. *Id*. at p. 5 ("Defendants engaged in what could easily be described as malicious retaliation[.]").  As proof of this, Plaintiff points to several instances, in the body-worn camera footage, when the defendant officers respond to her complaints about her leg pain, by reminding her that she first kicked Mesiti.

Plaintiff indicates that she is not sure which officer injured her.  As to that, her Second Amended Complaint alleges that it was Vadas who knelt on her leg, but her affidavit in opposition to Defendants' motion also contends that Mesiti was aware that she was being injured, since he attempted to conceal her cry of pain by loudly talking over her at the precise moment pressure was being applied to her leg. ECF No. 30-3 at ¶ 21.  Plaintiff also contends that Defendants' application of handcuffs constituted excessive force. *See, id*. at p. 8 ("Plaintiff submits that Defendant kneeling on Plaintiff's leg with enough force to break her tibia after take down and then subsequent handcuffing and then tightening of the handcuff is objectively unreasonable[.]").  Plaintiff therefore maintains that neither defendant is entitled to qualified immunity, since there is a triable issue of fact as to whether Defendants used excessive force.

---

[5] ECF No. 30-1 at p. 8.

5

On April 16, 2021, Defendants filed a reply, ECF No. 31.[6]  Defendants maintain that Plaintiff has not raised a triable issue of fact as to whether they fractured her leg, let alone whether they did so intentionally.  Indeed, Defendants suggest that Plaintiff fractured her own leg as she was kicking Mesiti. *Id*. at p. 4 ("[T]here is a loud snapping or cracking sound in the body camera videos when Ms. Cole kicked out at . . . Mesiti.").  Alternatively, Defendants argue that the evidence shows Plaintiff twisted her body as she fell, such that her left leg landed on her right leg, possibly causing the fracture.  Defendants also reiterate that they did not use any force against Plaintiff besides the arm-bar move that took her to the floor.  Defendants contend, therefore, that they are entitled to summary judgment, since Plaintiff admits that the arm bar is not the excessive force she is suing over, and her theory as to how the injury occurred is speculative and contrary to the evidence.  Defendants admit, though, that "it is likely true that intentionally and forcefully kneeling on someone's leg would not be protected by qualified immunity." *Id*. at p. 15.

## DISCUSSION

*Rule 56*

Defendants have moved for summary judgment pursuant to Fed. R. Civ. P. 56.  Summary judgment may not be granted unless "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). "[T]he movant must make a *prima facie* showing that the standard for obtaining summary judgment has been satisfied." 11 MOORE'S FEDERAL PRACTICE, §

---

[6] Preliminarily, Defendants contend that the Court should reject, on procedural grounds, Plaintiff's response to their statement of facts, since it does not cite to specific evidence of record. However, the Court rejects that argument.

6

56.11[1][a] (Matthew Bender 3d ed.). "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant may satisfy this burden by pointing to an absence of evidence to support an essential element of the nonmoving party's claim." *Gummo v. Village of Depew*, 75 F.3d 98, 107 (2d Cir.1996) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)), *cert denied*, 517 U.S. 1190 (1996).

The burden then shifts to the non-moving party to demonstrate "specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).[7] To do this, the non-moving party must present evidence sufficient to support a jury verdict in its favor. *Anderson*, 477 U.S. at 249. The underlying facts contained in affidavits, attached exhibits, and depositions, must be viewed in the light most favorable to the non-moving party. *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962). Summary judgment is appropriate only where, "after drawing all reasonable inferences in favor of the party against whom summary judgment is sought, no reasonable trier of fact could find in favor of the non-moving party." *Leon v. Murphy*, 988 F.2d 303, 308 (2d Cir.1993).

A bare denial is not necessarily sufficient to create a triable issue of fact to defeat summary judgment.[8] *See, Herrera-Amador v. New York City Police Dep't,* No.

---

[7] "The substantive law governing the case will identify those facts which are material and 'only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.' *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)." *Heard v. City of New York*, 319 F.Supp.3d 687, 692 (S.D.N.Y. 2018).

[8] *See, e.g, United States v. One Parcel of Prop. Located at 15 Black Ledge Drive, Marlborough, Conn.*, 897 F.2d 97, 102 (2d Cir. 1990) ("The evidence was so 'one-sided' that the government was entitled to summary judgment 'as a matter of law.' *Anderson*, 477 U.S. at 252, 106 S.Ct. at 2512. In her opposing affidavit, appellant merely asserts that she had no knowledge of drug trafficking taking place from her home, and that her husband never spoke of, consumed or displayed drugs or related materials in her presence. In view of the undisputed facts presented here, we agree with the district court that 'more detailed factual substance in support of her claim of ignorance' was required. . . . It may be that under some circumstances a claimant's flat denial of knowledge, without more, could suffice to create a genuine issue of fact precluding summary judgment under Rule 56(e). But on these facts, which included the seizure of drugs, drug paraphernalia, large sums of cash and weapons from the common areas and the master bedroom, such a bare denial was insufficient to create a genuine triable issue."); *see also, United States v. One Parcel of Prop., Located at 755 Forest Rd., Northford, Conn.*, 985 F.2d 70, 73 (2d Cir. 1993) ("[T]he abundance and visibility of the narcotics evidence contradict any contention that Franco took all reasonable steps

16CV5915NGGVMS, 2021 WL 3012583, at *21 (E.D.N.Y. July 16, 2021) ("Where probable cause is alleged to reside in video evidence, courts should consider that video evidence submitted in connection with a party's summary judgment motion to determine whether material fact issues exist. *See Scott v. Harris*, 550 U.S. 372, 380 (2007). 'When opposing parties tell two different stories, one of which is blatantly contradicted by the [video] record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.' *Id*."); *see also, Nelson v. Disboro*, No. 918CV657LEKCFH, 2020 WL 7021583, at *4 (N.D.N.Y. Nov. 30, 2020) ("It is well-established that such an evidentiary imbalance demonstrates that a factual dispute is not genuine.") (collecting cases).

### Section 1983

Section 1983 "is not itself a source of a substantive rights, but merely provides a method for vindication of federal rights elsewhere conferred." *Long v. Crowley*, No. 09BCVB00456A(F), 2012 WL 1202181 (W.D.N.Y. Mar. 22, 2012) (citations and internal quotation marks omitted). To establish individual liability under Section 1983, a plaintiff must show that the defendant acted under color of state law and caused the plaintiff to be deprived of a constitutional right. 42 U.S.C. § 1983.

Personal involvement is a prerequisite for liability under Section 1983, and a police officer is not personally involved in an allege constitutional violation merely because he is present at the scene of an arrest.[9] However, in actions such as this involving multiple police-officer

---

to prevent the illegal use of the property. A denial of the existence of drug paraphernalia that is in a person's plain view is not consistent with a claim that the person made all reasonable efforts to eliminate drug activity. *See 141st Street*, 911 F.2d at 879–80. The visible drug evidence thus distinguishes 418 57th Street, where we found a genuine dispute to exist[.]"); *United States v. $7,877.61 U.S. Currency,* No. 09-CV-6306P, 2015 WL 5719811, at *9 (W.D.N.Y. Sept. 30, 2015) ("[B]are denials or conclusory allegations might be found, in light of overwhelming evidence to the contrary, incredible as a matter of law[.]") (citation and internal quotation marks omitted).

[9] *See, Snead v. City of New York*, 463 F. Supp. 3d 386, 398 (S.D.N.Y. 2020) ("It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983. An officer's mere presence at the scene of a stop or arrest generally does not constitute sufficient

defendants, a defendant officer may be personally involved either because he directly violated the plaintiff's rights or because he failed to intervene to prevent another officer from violating such rights.[10]

> It is widely recognized that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence. An officer who fails to intercede is liable for the preventable harm caused by the actions of the other officers where that officer observes or has reason to know: (1) that excessive force is being used; (2) that a citizen has been unjustifiably arrested; or (3) that any constitutional violation has been committed by a law enforcement official. In order for liability to attach, there must have been a realistic opportunity to intervene to prevent the harm from occurring. Whether an officer had sufficient time to intercede or was capable of preventing the harm being caused by another officer is an issue of fact for the jury unless, considering all the evidence, a reasonable jury could not possibly conclude otherwise.

*Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994) (citations omitted).

<u>Fourth Amendment Excessive Force</u>

The legal principles applicable to Fourth Amendment excessive force claims may be summarized as follows:

> "[C]laims that law enforcement officers have used excessive force ... in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard." *Graham v. Connor*, 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id*. at 396–97, 109 S.Ct. 1865. Factors relevant to the determination of whether the government intruded too far on a suspect's Fourth Amendment rights include the severity of the crime at issue, whether the suspect posed an immediate threat to the safety of the officers or others, and whether the

---

personal involvement for § 1983 liability.") (citation and internal quotation marks omitted, collecting cases), *reconsideration denied sub nom*. *Snead v. LoBianco*, No. 16-CV-09528 (AJN), 2021 WL 861060 (S.D.N.Y. Mar. 8, 2021).

[10] *See, e.g., Harris v. City of New York*, No. 15-CV-8456 (CM), 2017 WL 6501912, at *3 (S.D.N.Y. Dec. 15, 2017) ("To be held liable under § 1983 for false arrest or failure to intervene, an officer must be "personally involved" in an unlawful arrest. An officer can be personally involved in one of two ways: He can directly participate in the arrest, or he can fail to intervene to stop an unlawful arrest when the evidence establishes that he would have been able to do so.") (citations omitted).

suspect was actively resisting arrest. *Brown v. City of New York*, 798 F.3d 94, 100 (2d Cir. 2015) (citing *Graham v. Connor*, 490 U.S. at 396, 109 S.Ct. 1865). "Defendants are liable as long as the force used exceeded the force needed for the factual circumstances and the fact that Plaintiff may not have sustained serious long lasting harm is not dispositive." *Graham v. City of New York*, 928 F.Supp.2d 610, 618 (E.D.N.Y. 2013); *see also Lemmo v. McKoy*, No. 08-CV-4264 (RJD), 2011 WL 843974, at *5-6 (E.D.N.Y. Mar. 8, 2011) (collecting cases in which courts have both permitted and dismissed excessive force claims predicated on *de minimis* injury). While "not every push or shove constitutes excessive force," *Lennon v. Miller*, 66 F.3d 416, 426 (2d Cir. 1995) (citing *Graham v. Connor*, 490 U.S. at 396, 109 S.Ct. 1865), a show of force by an officer that is grossly disproportionate to the risk of harm, as determined by the *Graham v. Connor* factors, may support a claim for excessive force.

"That multi-factor test is not meant to be applied rigidly, however, and the inquiry into whether force is reasonable requires an objective examination of the totality of the circumstances." *Gersbacher v. City of New York*, No. 14-CV-7600 (GHW), 2017 WL 4402538, at *9 (S.D.N.Y. Oct. 2, 2017) (internal quotation marks omitted). The "reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id*. at 100. "[G]ranting summary judgment against a plaintiff on an excessive force claim is not appropriate unless no reasonable factfinder could conclude that the officers' conduct was objectively unreasonable." *Amnesty Am. v. Town of West Hartford*, 361 F.3d 113, 123 (2d Cir. 2004) (Sotomayor, J.).

*Othman v. City of New York*, No. 13CV4771NGGSJB, 2018 WL 1701930, at *5 (E.D.N.Y. Mar. 31, 2018); *see also, McKinney v. City of Middletown*, 712 F. App'x 97, 98 (2d Cir. 2018) ("Even where most of the facts concerning the application of force are undisputed, granting summary judgment against a plaintiff on an excessive force claim is not appropriate unless no reasonable factfinder could conclude that the officers' conduct was objectively unreasonable. An officer's use of force must be reasonable even when an arrestee or detainee is actively resisting.") (citations and internal quotation marks omitted).

"[E]xcept for § 1983's requirement that the tort be committed under color of state law, the essential elements of [excessive force and state law assault and battery claims are] substantially identical." *Humphrey v. Landers*, 344 F. App'x 686, 688 (2d Cir. 2009) (quoting *Posr v. Doherty*, 944 F.2d 91, 94–95 (2d Cir.1991)).

*Qualified Immunity*

"The doctrine of qualified immunity shields police officers acting in their official capacity from suits for damages unless their actions violate clearly-established rights of which an objectively reasonable official would have known. When a defendant moves for summary judgment based on qualified immunity, courts consider whether the facts shown make out a violation of a constitutional right, and whether the right at issue was clearly established at the time of the defendant's alleged misconduct." *McKinney v. City of Middletown*, 49 F.4th 730, 738 (2d Cir. 2022) (citations and internal quotation marks omitted).

"Summary judgment on qualified immunity is appropriate when 'a jury, viewing all facts in the light most favorable to the plaintiff, could conclude that officers of reasonable competence could disagree on the legality of the defendant's actions.'" *Charland v. Nitti*, No. 1:11-CV-1191 MAD/RFT, 2014 WL 1312095, at *7 (N.D.N.Y. Mar. 31, 2014) (quoting *Cerrone v. Brown*, 246 F.3d 194, 202 (2d Cir.2001)).

The right to be free from excessive force by police during an arrest is clearly established, and summary judgment on the basis of qualified immunity is therefore not appropriate if there is a triable issue of fact as to whether the use of force was reasonable. *See, Curry v. City of Syracuse*, 316 F.3d 324, 334 (2d Cir. 2003) (Indicating that the "right to be free from the use of excessive force" has been "clearly established" at all relevant times, and that "[w]here the circumstances are in dispute, and contrasting accounts present factual issues as to the degree of force actually employed and its reasonableness, a defendant is not entitled to judgment as a matter of law on a defense of qualified immunity.") (quoting *Mickle v. Morin*, 297 F.3d 114, 122 (2d Cir. 2002)).

Where qualified immunity applies to a plaintiff's Section 1983 Fourth Amendment excessive force claim, it also applies to her analogous New York State law assault and battery

11

claims. *See, Jenkins v. City of New York*, 478 F.3d 76, 86–87 (2d Cir. 2007) ("Qualified immunity protects an official from liability under federal causes of action but is not generally understood to protect officials from claims based on state law. Nevertheless, a similar doctrine exists under New York common-law. If the detective defendants were entitled to qualified immunity under federal law, summary judgment would be similarly appropriate on Jenkins' state law false arrest claim.") (footnotes omitted).

<u>Triable Issues of Fact Preclude Summary Judgment</u>

Here, Defendants acknowledge that "it is likely true that intentionally and forcefully kneeling on [Plaintiff's] leg [under the circumstances of this case] would not be protected by qualified immunity." ECF No. 31 at p. 15. However, Defendants ask the Court to find as a matter of law that their use of force, which they maintain was limited to the use of an arm bar, was reasonable. The Court, though, cannot say as a matter of law that the use of force was reasonable, since Plaintiff sustained a fractured leg, and there is a triable issue of fact as to whether the fracture was caused by Defendants unnecessarily applying force to her leg after she was restrained. Resolution of that issue will turn upon credibility findings which the Court cannot make on a summary judgment motion. Consequently, Defendants' application must be denied.

## CONCLUSION

Defendants' motion for summary judgment (ECF No. 28) is denied.

SO ORDERED.

Dated: Rochester, New York
November 29, 2022

ENTER:

_____
CHARLES J. SIRAGUSA
United States District Judge